573 So.2d 868 (1990)
FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Appellant,
v.
Karen COLE, As Personal Representative of the Estate of George Douglas Cole, Deceased, Appellee.
No. 89-03281.
District Court of Appeal of Florida, Second District.
November 14, 1990.
Rehearing Denied February 4, 1991.
*869 Jeffrey R. Fuller of Williams, Brasfield, Wertz, Fuller & Lamb, P.A., St. Petersburg, for appellant.
Arnold R. Ginsberg of Ginsberg, P.A., Edward A. Perse, P.A., and Stewart W. Logan of Brumer, Cohen, Logan, Kandell & Kaufman, P.A., Miami, for appellee.
PARKER, Judge.
The Florida Insurance Guaranty Association, Inc. (FIGA) appeals a final order entering declaratory judgment for Karen Cole, as personal representative of her deceased husband's estate. The trial court granted Cole's motion for judgment on the pleadings, declaring as a matter of law that each potential beneficiary in a wrongful death action arising from one vehicular accident could claim separately the $300,000 FIGA statutory limit for covered claims of insolvent insurers. We reverse.
The deceased was killed as a result of a motor vehicle collision in 1986 involving a City of Tampa garbage truck. The deceased's estate filed suit against the City of Tampa and other defendants under the Florida Wrongful Death Act, chapter 768, Florida Statutes (1985).[1] The wrongful death action requested damages for the estate and for three survivors.
At the time of the accident, the City of Tampa maintained liability insurance through Integrity Insurance Company with limits of coverage of $3,000,000 per occurrence. Integrity became insolvent and pursuant to chapter 631, Florida Statutes (1985), FIGA became obligated to pay Integrity's "covered claims," as defined by section 631.54(3),[2] Florida Statutes (1985). Section 631.57(1)(a)3,[3] Florida Statutes (1985) limits FIGA's obligation for each "covered claim" to $300,000.
Karen Cole, as personal representative, sought and obtained declaratory relief against FIGA to the effect that her husband's death gave rise to a "covered claim" of $300,000 for each of the three survivors of the decedent's estate. This amount is well within the policy's limit of liability for that occurrence. FIGA maintains, however, that the decedent's death results in a single "covered claim" to his estate, which FIGA is obligated to pay to the extent of $300,000. We agree with FIGA's position, but not with its entire argument.
In Florida Ins. Guaranty Ass'n v. Cope, 405 So.2d 292 (Fla. 2d DCA 1981), this court held that a wrongful death claim brought by the personal representative of the decedent's estate is a single claim even though there may be numerous potential beneficiaries in the estate, entitling survivors to the per person not per accident coverage under uninsured motorist provision. Although this holding is instructive in this case, it was a determination of the full *870 extent of uninsured motorist coverage provided by the insurance policy. Thus, in Cope the critical issue was not the limit of the statutory "covered claim," but rather the limit of the coverage under the policy, because the policy limit was substantially smaller than the statutory limit. Although FIGA was involved in the appeal, the holding in Cope did nothing more than expand the use of the per person automobile liability limit in wrongful death cases from the sphere of liability coverage established in Skroh v. Travelers Ins. Co., 227 So.2d 328 (Fla. 1st DCA 1969) to that of uninsured motorist. The issue today is whether a similar per person analysis should be used to interpret the statutory definition of "covered claim."
There is little case law or prior precedent to help this court understand or interpret the statutory definition of a "covered claim." See Guaranty Bank & Trust Co. v. Ideal Mutual Ins. Co., 526 So.2d 1094 (La. 1988). The concept of "an unpaid claim ... which arises out of, and is within the coverage, and [is] not in excess of the applicable limits of an insurance policy ...," is a helpful definition, but it does not truly define the nature of a "claim." § 631.54(3), Fla. Stat. (1985).
FIGA takes the position that, since the policy is an "occurrence" policy, a claim should be equated with an occurrence. We find this proposal to be overly narrow. This statute must be liberally construed to effect its purposes, including avoiding financial loss to claimants or policyholders. §§ 631.51 and 631.53, Fla. Stat. (1985). Although there is only one death involved in this occurrence, there certainly are many accidents which involve death or injury to several persons. There is nothing in the statute which would suggest that multiple, unrelated parties should be obligated to file a single claim merely because they or their family member were injured or killed in a single accident. Each injured person would seem to have a "covered claim" which arises out of and is within the coverage. So long as the statutory claims do not exceed the insurance policy's limit of liability for one occurrence, the per person approach to the definition of a statutory claim would appear to be the fairest method to accomplish the purposes of the Florida Insurance Guaranty Association Act.
We recognize that the appellee's interpretation of a statutory covered claim is supported by analogy to the interpretation of "claim" in sovereign immunity. Section 768.28(5), Florida Statutes, has always limited the state's liability for a "claim" to a statutory amount for any one person and to a larger amount for any one occurrence. Without reference to the Skroh decision, that statute has been interpreted to permit multiple survivors to receive the per occurrence limit. Dep't of H.R.S. v. McDougall, 359 So.2d 528 (Fla. 1st DCA), cert. denied, 365 So.2d 711 (Fla. 1978). Even though this approach may be acceptable to define the limits of sovereign immunity, we are not inclined to extend it to chapter 631. Only a handful of insureds receive any protection from sovereign immunity and it seems unwarranted to expand this sovereign immunity concept into the broader field of insurance. Sovereign immunity is not equivalent to insurance, and there may be problems in extending its concepts into insurance law. See Hillsborough County Hospital and Welfare Bd. v. Taylor, 546 So.2d 1055 (Fla. 1989).
The Florida Insurance Guaranty Association Act is derived from a proposed uniform act prepared by the state insurance commissioners of this country. Friend, Insolvent Insurance Companies, 45 Fla.B.J. 183 (1971). It is reasonable to assume that it was intended to be interpreted under common insurance concepts. Insurance typically handles personal injury claims on a per person basis  subject to a per accident or per occurrence limitation of liability. It appears appropriate to continue that approach during insolvency. Thus, the $300,000 statutory limitation for a covered claim in this case applies to the claim of any one person who is injured or killed. Here, there are multiple survivors under the wrongful death act suing for the death of one person caused by the act(s) of a single insured. These survivors are only entitled to a single claim to the maximum of the statutory amount of $300,000 even if *871 the limitation of liability for any one occurrence in the relevant insurance policy provides for more generous coverage.
Reversed and remanded for further proceedings.
SCHOONOVER, C.J., and CAMPBELL, J., concur.
NOTES
[1] This is not an appeal of that suit but of a related declaratory action. The City of Tampa is not involved in this appeal.
[2] That subsection, in part, provides:

(3) "Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy to which this part applies, issued by an insurer, if such insurer becomes an insolvent insurer... .
[3] That section, in part, provides:

(1) The association shall:
(a) Be obligated to the extent of the covered claims existing:
... .
but such obligation shall include only that amount of each covered claim which is in excess of $100 and is less than $300,000, ...